# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TYRA WILLIAMS | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 6:26-cv-58-JAR |
| CITY OF DURANT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**

Before the Court is the motion to dismiss filed by defendants City of Durant (the "City") and Sergeant Brandon Mitchell ("Sgt. Mitchell" or "Mitchell") (collectively, "City Defendants") pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). [Dkt. 19].[1] Although styled as the City's motion, it seeks dismissal of every claim against both the City and Mitchell, [*id.* at 1-2, 12], so the Court treats it as a joint motion. Plaintiff Tyra Williams ("Williams") opposes the motion, [Dkt. 24], and City Defendants replied, [Dkt. 29]. By consent of the parties, [Dkt. 31], and under Fed. R. Civ. P. 73(a) and 28 U.S.C. § 636(c)(1), the undersigned United States Magistrate Judge exercises full jurisdiction over this action.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

The following allegations are drawn from the Complaint, [Dkt. 2], and are accepted as true solely to resolve the pending motion.[2] On March 28, 2025, Williams,

---

[1] For clarity and consistency herein, when the Court cites to the record, it uses the pagination and document numbers assigned by ECF.

[2] The Court does not accept as true the Complaint's legal characterizations—for example, that Mitchell acted "without probable cause," [Dkt. 2, ¶¶ 80, 84-85], or "breached a duty," [*id.* ¶ 60]—but considers whether the factual allegations plausibly support them.

a military police officer with no criminal record and a customer of defendant Vision Bank for several years, submitted a withdrawal slip at the bank's Durant drive-thru to withdraw approximately $500 from her account. [Dkt. 2, ¶¶ 10-12]. While Williams waited, and unbeknownst to her, a bank employee called 911 and reported: "[w]e have a lady in the drive-thru who's trying to push a fraud check. She's done this in the past and I just talked to one of the investigators and they told me to call the police department and get them to send somebody." [*Id.* ¶¶ 13-14]. Williams alleges she was not attempting to cash any check. [*Id.* ¶ 15].

Sgt. Mitchell arrived, ordered Williams out of her car, and twice directed her to sit in his patrol vehicle; she complied and sat in the back seat. [*Id.* ¶¶ 17-19]. Mitchell told her that "over the past several months, you've been cashing fraudulent checks." [*Id.* ¶ 20]. She denied it, and he told her to "not play stupid" and to remain in the car. [*Id.* ¶¶ 20-21]. Inside the bank, a teller told Mitchell that Williams "was only trying to withdraw money from her account" on that day. [*Id.* ¶ 22]. The bank's president, defendant Jeff Monroe ("Monroe"), then told Mitchell that Williams was the one who "did all the stolen checks" and was "the one from all those pictures," which the Complaint alleges referred to screenshots from the bank's surveillance cameras. [*Id.* ¶¶ 23-25]. Williams alleges she "was clearly and obviously not" the person in those images and that Sgt. Mitchell did not view them, ask about the prior frauds or the bank's prior dealings with her, or seek any other verification. [*Id.* ¶¶ 26-27, 30]. When Mitchell returned to his patrol car, Williams told him she "doesn't even have checks." [*Id.* ¶ 31].

Mitchell then drove Williams to the police station. On the way, he told her that if she lied to the detective, "you're just gonna go to jail," and that "everything you do at a bank is on camera." [*Id.* ¶¶ 32-35]. At the station, he placed her in an interrogation room and denied her request to make a phone call; she remained alone there for more than an hour. [*Id.* ¶¶ 37-38]. A detective eventually questioned her briefly, stepped out to take a phone call, and returned to tell her that "they had made a mistake and [] she was free to go." [*Id.* ¶¶ 39-41]. No charges followed. [*Id.* ¶ 42]. Williams alleges that the bank's security officer later told her the bank had mistakenly associated her car with the actual perpetrator, who drove a different vehicle. [*Id.* ¶ 45].

Williams filed this action on March 2, 2026, asserting six claims. [Dkt. 2]. Two are directed at City Defendants: Count II, a claim against the City under the Oklahoma Governmental Tort Claims Act ("GTCA") premised on Mitchell's arrest of Williams without probable cause, [*id.* ¶¶ 56-63]; and Count V, a claim against Mitchell under 42 U.S.C. § 1983 for an unreasonable seizure in violation of the Fourth Amendment, [*id.* ¶¶ 75-87].[3] She seeks compensatory damages, interest, and attorney's fees. [*Id.* at 11].

## II. DISMISSAL STANDARDS

A party may challenge standing under Fed. R. Civ. P. 12(b)(1) through either

[3] The remaining claims—negligence and negligent training and supervision against Vision Bank (Counts I and III), false arrest and false imprisonment against Vision Bank and Monroe (Count IV), and defamation against Monroe (Count VI)—are not at issue in this motion. The Court has federal-question jurisdiction over Count V, 28 U.S.C. § 1331, and supplemental jurisdiction over the state-law claims, which arise from the same events, 28 U.S.C. § 1367(a).

a facial or factual attack. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). A facial attack "assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Id.* (citation omitted).

To survive a motion under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor, but it does not extend that assumption to legal conclusions or "formulaic recitation[s] of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555); *see Khalik v. United Air Lines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012). The Court ordinarily limits its review to the complaint, its exhibits, and any documents the complaint incorporates by reference or refers to, provided those documents are central to the claims and no party disputes their authenticity. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

## III. ANALYSIS

### A. Standing

City Defendants assert Williams lacks standing, but they develop that argument only as part of their contention that she has not alleged compensable damages. [Dkt. 19 at 2-4, 10-12]. Because standing is jurisdictional, the Court addresses it first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). City Defendants rely only on the Complaint, so their challenge is facial. *Baker*, 979

F.3d at 872. Standing requires an injury in fact that is fairly traceable to the defendant's challenged conduct and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Williams alleges Mitchell placed her in his patrol car, transported her to the police station, and confined her in an interrogation room for more than an hour. [Dkt. 2, ¶¶ 19, 32, 37-38]. That physical restraint is a concrete and particularized injury. It is traceable to Mitchell's alleged conduct, for which Count II seeks to hold the City vicariously liable, and the damages Williams seeks would redress it. Whether governing law makes the alleged injuries compensable is a merits question that does not bear on standing. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1092-93 (10th Cir. 2006) (en banc). Williams has standing to pursue Counts II and V.

### B. Capacity in Which Sgt. Mitchell is Sued

City Defendants contend that Williams sues Mitchell only in his official capacity, which would make Count V "functionally a cause of action against [the] City." [Dkt. 19 at 1-2]. The Complaint does not specify whether Williams sues Mitchell in his individual or official capacity. *See* [Dkt. 2, ¶ 3]. Accordingly, the Court looks to "the substance of the pleadings and the course of the proceedings." *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993); *see Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Count V seeks damages from Mitchell for personally seizing Williams and identifies no City policy or custom behind that conduct. [*Id.* ¶¶ 75-87]. Williams also represents that she sues Mitchell solely in his individual capacity and asserts no official-capacity claim. [Dkt. 24 at 5 n.2]. City Defendants' reply does not dispute that

representation. *See generally* [Dkt. 29]. The Court therefore construes Count V as an individual-capacity claim only and holds Williams to her representation that she asserts no official-capacity claim against Mitchell.

### C. PROBABLE CAUSE

City Defendants principally argue that Counts II and V both require the absence of probable cause and that the alleged facts establish Mitchell had probable cause. [Dkt. 19 at 4-10; Dkt. 29 at 2-11].

A warrantless arrest complies with the Fourth Amendment only if supported by probable cause, which exists when "the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable causation in the belief that an offense has been or is being committed." *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) (en banc) (cleaned up).[4] Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," and "is not a high bar." *D.C. v. Wesby*, 583 U.S. 48, 57 (2018) (quotation marks omitted). It is judged by whether the historical facts known at the time of the arrest, "viewed from the standpoint of an objectively reasonable police officer," amount to probable cause. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quotation marks omitted). Officers may ordinarily rely on a victim's statement "absent some reason to think the

[4] City Defendants characterize the encounter as a temporary detention, [Dkt. 19 at 2], but they do not argue that any part of it required less than probable cause; they defend the entire seizure on probable-cause grounds. The Court therefore assesses probable cause as of the moment Mitchell transported Williams to the station, by which point, on the facts alleged, the seizure had become an arrest. *See Kaupp v. Texas*, 538 U.S. 626, 630 (2003) (per curiam); *Dunaway v. New York*, 442 U.S. 200, 212, 216 (1979). The Court expresses no view on whether any earlier part of the encounter was a lawful investigative detention.

statement not trustworthy," *Cortez*, 478 F.3d at 1121, and once they have probable cause, they need not continue the investigation or credit a suspect's claim of innocence, *Romero v. Fay*, 45 F.3d 1472, 1476-77 (10th Cir. 1995); *Wesby*, 583 U.S. at 61. But officers must "reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." *Cortez*, 478 F.3d at 1117 (quoting *Romero*, 45 F.3d at 1476-77). They "may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination," *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1259 (10th Cir. 1998), and when they have both inculpatory and exculpatory evidence, "they must not ignore the exculpatory evidence in order to find probable cause," *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) (quotation omitted).

At this stage, the Court asks not whether Sgt. Mitchell in fact had probable cause, but whether the Complaint's factual allegations, viewed in Williams' favor, plausibly show that he lacked it. As alleged, Mitchell had four pieces of information when he took Williams to the station: (1) a report that a woman in the drive-thru was trying to pass a fraudulent check and had done so before, [Dkt. 2, ¶¶ 14, 17, 20];[5] (2) a teller's statement that Williams "was only trying to withdraw money from her account on that day," [*id.* ¶ 22]; (3) Monroe's statements that Williams "did all the stolen checks" and was "the one from all those pictures," [*id.* ¶¶ 24-25]; and (4)

[5] The Complaint does not allege what the dispatcher relayed to Mitchell. Because Mitchell arrived minutes after the call and immediately accused Williams of prior check fraud, [Dkt. 2, ¶¶ 14, 17, 20], the Court assumes he received the substance of that report. The analysis is the same either way.

Williams' denial and her statement that she possessed no checks, [*id.* ¶¶ 20, 31]. The Complaint further alleges that Monroe's identification rested on surveillance images held by the bank, that Williams was "clearly and obviously not" the person depicted, and that Sgt. Mitchell—who was at the bank and remarked that "everything you do at a bank is on camera"—did not look at the images or make any other inquiry before taking her into custody. [*Id.* ¶¶ 25-27, 30, 35-36].[6]

These allegations plausibly support an inference that Sgt. Mitchell lacked probable cause. First, the report the summoned Mitchell rested on the premise that Williams was attempting to pass a fraudulent check, and the bank's own employee contradicted that premise at the scene. *Compare* [*id.* ¶ 14] *with* [*id.* ¶ 22]. Because the complaining party itself produced that inconsistency, a reasonable officer would weigh it in deciding how much credence the bank's remaining accusation deserved. Second, the Complaint alleges that Monroe based his identification not on personally observing the prior offenses but on the bank's surveillance images. [*Id.* ¶ 25]. Those images were the "basic evidence" that would confirm or refute the identification. They were also at the bank where Sgt. Mitchell stood, and, according to the Complaint, would have shown Williams was not the person depicted. [*Id.* ¶¶ 25-27, 36]. The Fourth Amendment does not require an officer to exhaust every investigative avenue, *Romero*, 45 F.3d at 1476-77, but it does require him to "investigate basic evidence" before a warrantless arrest, *Cortez*, 478 F.3d at 1117. These allegations make it at

[6] The Complaint does not attribute to Sgt. Mitchell its allegations about what the bank and its security officer knew or later learned, [Dkt. 2, ¶¶ 28-29, 45, 73], so the Court does not treat that information as available to Mitchell when he arrested Williams.

least plausible that a reasonable officer could not rely on Monroe's statement without first examining the images Monroe identified as its basis.

City Defendants' contrary arguments rest in part on characterizations the Complaint does not support. They contend Mitchell relied on "multiple reliable witnesses" who "identified [Williams] as the criminal perpetrator." [Dkt. 29 at 6]. The Complaint alleges instead that one bank employee contradicted the accusation and that another, Monroe, identified Williams from photographs. [Dkt. 2, ¶¶ 22-25]. City Defendants also assert that Williams "admits" the surveillance footage was reviewed only after her arrest, [Dkt. 29 at 10], but the Complaint contains no such allegation. They further argue that Mitchell could reasonably have understood "all those pictures" to mean identifying images of a suspect rather than footage of the crime. [*Id.* at 11]. On either reading, however, the pictures depicted the suspect, and the Complaint alleges they would have shown Williams was not that person. [Dkt. 2, ¶¶ 25-26]. What Sgt. Mitchell understood, and what the images would have revealed, are factual questions that cannot be resolved on a Rule 12(b)(6) motion.

Nor do City Defendants' authorities require dismissal. *Scull v. New Mexico*, 236 F.3d 588, 598 (10th Cir. 2000), and *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1221 (10th Cir. 2020), establish only that officers need not investigate a claim of innocence before acting, or continuing to act, on existing probable cause. Williams does not rely on her denial alone. She alleges that probable cause never arose, because the bank's own employee contradicted the accusation at the scene and the accusation rested on images Sgt. Mitchell had at hand but did not

examine. And under *Wesby*, a reasonable officer weighs a suspect's explanation together with "all of the surrounding circumstances." 538 U.S. at 61. City Defendants correctly observe that, unlike the officers in *Baptiste*, the Complaint does not allege Mitchell viewed the images. [Dkt. 29 at 9-11]; *see Baptiste*, 147 F.3d at 1254-57. That distinction may matter on a developed record, but it does not establish probable cause as a matter of law on the facts alleged.

The Court does not hold that Sgt. Mitchell lacked probable cause. The record may develop differently, including as to what Mitchell was told, what the images showed, and how accessible they were. The Court holds only that the Complaint's factual allegations do not establish probable cause as a matter of law and plausibly allege its absence. The Court therefore denies the motion to dismiss Count V on this ground. Because City Defendant's probable-cause challenge to Count II rests on the same premise, [Dkt. 19 at 4], it fails for the same reason.

### D. Damages

Finally, City Defendants argues that Williams has not pleaded compensable damages because she alleges no physical injury or property loss, and that she has not alleged their conduct caused her damages. [Dkt. 19 at 10-12].

As to Count V, compensatory damages under § 1983 may include "impairment of reputation ..., personal humiliation, and mental anguish and suffering." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986); *see Carey v. Piphus*, 435 U.S. 247, 264 (1978). A plaintiff who proves a constitutional violation without actual injury may recover nominal damages. *Carey*, 435 U.S. at 266. *Stachura* rejected only

damages measured by the abstract value of constitutional rights. 477 U.S. at 310. The Oklahoma authorities City Defendants cite address state-law negligence damages, [Dkt. 19 at 11], and do not govern the federal claim. Williams alleges the seizure caused her humiliation, emotional distress, and reputational harm, among other losses. [Dkt. 2, ¶¶ 47, 87]. Rule 8 requires no more; a party must specifically state only special damages. Fed. R. Civ. P. 8(a)(3), 9(g). Williams likewise adequately alleged causation, because she alleges Mitchell personally carried out the seizure that produced those injuries. [*Id.* ¶¶ 32, 37-38, 85-87].

As to Count II, City Defendants invoke the Oklahoma rule that, in negligence actions, damages for mental anguish are recoverable only if "produced by, connected with, or the result of" physical suffering or injury. *Ellington v. Coca Cola Bottling Co. of Tulsa*, 1986 OK 11, ¶ 3, 717 P.2d 109, 111 (quotation omitted). That rule does not support dismissal. The injury Count II alleges is not freestanding emotional distress; it is the arrest and detention of Williams herself. [*Id.* ¶¶ 32, 37-38, 47, 60-61]. City Defendants cite no authority holding that Oklahoma law does not recognize an unlawful restraint of liberty as a cognizable. And in false-imprisonment actions, Oklahoma does not require a plaintiff to prove physical injury in addition to mental suffering. *Halliburton-Abbot Co. v. Hodge*, 1935 OK 354, syl. ¶ 0, 44 P.2d 122, 123. Whether, and to what extent, Williams may recover mental-anguish damages on Count II as pleaded goes to the measure of recovery rather than to whether Count II states a claim. Nor have the parties addressed how Oklahoma's damages rules apply

to a GTCA claim premised on an arrest without probable cause. The Court declines to resolve that question now; City Defendants may raise it at a later stage.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that City Defendants' motion to dismiss, [Dkt. 19], is **DENIED**.

IT IS FURTHER ORDERED that Count V be construed as asserted against Mitchell in his **individual capacity only**, consistent with Williams' representation discussed in Part III.B.

DATED this 29th day of October, 2026.

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE